UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DARLENE K. VON VILLE,

    Plaintiff,

v.

MEGAN J. BRENNAN
POSTMASTER GENERAL
OF THE UNITED STATES
POSTAL SERVICE,
    Defendant.

Case No. 2:15-cv-00411
CHIEF JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Elizabeth P. Deavers

## OPINION AND ORDER

Plaintiff Darlene K. Von Ville ("Plaintiff") brings this action against Defendant Megan J. Brennan, Postmaster General of the United States Postal Service ("Defendant"), alleging that Defendant discriminated against her due to her disability in violation of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 791 *et seq*. This matter is before the Court on Defendant's Motion for Summary Judgment. (ECF No. 27.) For the reasons that follow, Defendant's motion is **GRANTED**.

### I. BACKGROUND

Plaintiff is a former U.S. Postal Service employee. (Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Opp.") at 2, ECF No. 34.) She began her employment with the U.S. Postal Service ("USPS") on April 20, 1985, left work in July 12, 2007, and retired due to a disability in October 2007.[1] (*Id.*) Plaintiff alleges that Defendant discriminated against her due to her disability in violation of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 791 *et seq*. (*Id.* at 9.)

---

[1] Plaintiff does not explain her absence from work starting on July 12, 2007 but merely states "Plaintiff was an employee of the United States Postal Service, commencing her employment on or about April 20, 1985 and concluding on July 12, 2007." (Pl.'s Opp. at 2.)

In March of 2002, Plaintiff's psychologist wrote Defendant stating that Plaintiff should be moved to the position of a window clerk. (*Id.* at 2.) Between March 2002 and June 2002 Defendant indicated to Plaintiff that there were no window clerk positions available. (*Id.*) Plaintiff alleges that she took disability leave from September 2002 until October 28, 2004. (Def. Ex. 5, Plaintiff's Responses to Defendant's First Set of Interrogatories, ECF No. 27-9.) On September 9, 2002 Plaintiff received a Notice of Removal for "Unsatisfactory Attendance/Improper Conduct" from USPS. That same month, Plaintiff filed an internal complaint with USPS alleging that the USPS failed to accommodate her disability by not placing her in the work location recommended by her psychologist. On March 17, 2003, the USPS issued Plaintiff a Notice of Separation. However, on October 28, 2004, after Plaintiff's workers compensation benefits terminated, Plaintiff was reinstated by USPS as a window clerk.[2] (Defendant's Motion for Summary Judgment ("Def.'s Br. Summ. J.") at 7, ECF No. 27.) In April of 2005, Plaintiff successfully bid for a new position in the Registry Room as a mail processing clerk. (*Id.*) She worked in the Registry Room until June of 2005 when Plaintiff stopped working and collected workers compensation until September 2005. (Pl.'s Opp. at 13.) From September 2005 until July 2007, Plaintiff worked as a clerk in the distribution center. (Def. Ex. 5, ECF No. 27-9.)

After holding a hearing on Plaintiff's complaint, the EEOC Administrative Law Judge ("ALJ") issued a decision concluding that the USPS failed to take reasonable steps to accommodate Plaintiff and discriminated against her on the basis of her disability when it issued her separation notices in 2002 and 2003.[3] (Pl.'s Opp. at 2–3.) The USPS adopted the ALJ's

---

[2] The parties do not clarify what took place been 2003 when Plaintiff received the Notice of Separation and 2004 when she was reinstated.

[3] The parties do not provide the date the hearing took place or the procedural history prior to the hearing except as detailed herein.

2

decision on September 12, 2005. Upon adopting the ALJ's decision, the USPS then issued an order ("Final Order") stating that the USPS "would determine the appropriate amount of back pay, interest, and other benefits due Petitioner from September 9, 2002, until the present." (Pl. Ex. F. at 2, ECF No. 34-6.)

After further appeals and determinations regarding the amount of compensation owed to Plaintiff, the USPS issued Plaintiff checks on April 22, 2011 for $27,789.83 in back pay and benefits and $18,809.95 in interest. Plaintiff does not contest her receipt of the money or that she accepted the compensation. According to a compliance report submitted by the USPS to the EEOC's Compliance Office, the USPS complied with the Final Order by taking the following actions: USPS expunged pertinent information from all records; provided eight hours of EEO training to the responsible management official; issued a check to Plaintiff for $27,789.83 in back pay and benefits and $18,809.95 in interest; and issued a check to Plaintiff's attorney for $2,501.71 in attorney's fees and costs. (Def. Ex. A, EEOC Decision On a Petition For Enforcement, ECF No. 27-2.) Of the $27,789.83 issued to Plaintiff for back pay, $7,016.62, marked as "additional income" compensated Plaintiff for the loss of her annual leave. (Def. Ex. B, ECF No. 27-3.)

Plaintiff filed a Petition for Enforcement on July 10, 2013, alleging that Defendant failed to comply with the ALJ's Final Order. On October 31, 2014, The ALJ determined that "the Agency complied with our order to provide Petitioner with back pay together with interest and benefits, and to provide her a detailed account of its calculations" and that the Defendant had reinstated Plaintiff to a window clerk position on October 28, 2004. (*Id.*)

On January 30, 2015, Plaintiff filed the instant Complaint with this Court alleging that Defendant violated the Rehabilitation Act by discriminating against her due to her disability–by

3

failing to comply with the EEOC decision and by constructively discharging her. Defendant moved for summary judgement contending that Plaintiff failed to offer any evidence to establish a prima facie claim under the Rehabilitation Act.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323 (internal quotations omitted). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Liberty Lobby, Inc.*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (the requirement that a dispute be "genuine" means that there must be more than "some metaphysical doubt as to the material facts").

Consequently, the central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby, Inc.*, 477 U.S. at 251–52.

### III. ANALYSIS

Plaintiff alleges that USPS did not comply with the Final Order requiring the USPS to reinstate and compensate her for found discrimination and that USPS discriminated against her on account of her disability through a constructive discharge. USPS moves for summary judgment on all of Plaintiff's claims.

#### A. Defendant Complied with the Final Order.

Plaintiff contends that Defendant did not comply with the Final Order for three reasons: (1) she was not reinstated into her position as a window clerk; (2) Defendant did not compensate her for lost benefits; and (3) Defendant did not give her access to her Thrift Savings Plan ("TSP").

As discussed below, Defendant has presented sufficient evidence showing that it did comply with the Final Order. As such, Plaintiff has been fully compensated and accepted compensation for any harm suffered through October 28, 2004.

*1. Reinstatement*

Plaintiff contends that Defendant did not comply with the Final Order because she "was never reinstated to her former position as a Window Clerk or a substantially equivalent position." (Complaint 1 ("Compl.") ¶ 42, ECF No. 1.) The EEOC rejected this contention in its October 31, 2014 Order where it found:

> The petition for enforcement concerns only the Agency's compliance with our orders to reinstate petitioner and to pay her back pay and attorney's fees and costs. Petitioner contends that the Agency failed to comply with our order to reinstate her to a Window Clerk position. However, we note that the same claim

5

> was previously raised by the Petitioner in EEOC Appeal No. 0120080116, wherein the Commission found that the Agency had complied with our order to reinstate Petitioner. As noted in that decision, Petitioner acknowledged in a June 2007 affidavit statement that she was returned to work as a Window Clerk effective October 28, 2004.

(Def. Ex. A at 5, ECF No. 27-2.) Likewise, Plaintiff admitted during her deposition that she was in fact reinstated as a window clerk in October 2004.

> Q. And then you're back October 2004 with the USPS, and your designation is window clerk?
> A. Yes, They returned me to my seniority earned position when my worker's comp was terminated, because I had healed enough to return to my window clerk.
> Q. Again, I just want to be clear, and that situation held until April of 2005?
> A. Correct.
> Q. You remained a window clerk from October 2004 to April of 2005?
> A. Correct.

(Deposition of Darlene K. Von Ville ("VV Dep.") at 3, ECF No. 27-5.)

By Plaintiff's own admission the USPS restored her to the position of window clerk. Accordingly, Defendant complied with the Final Order in regards to reinstatement.

*2. Payment of Benefits*

The Final Order directed Defendant to compensate Plaintiff for "back pay, interest, and other benefits". (Def. Ex. A, ECF No. 27-2.) Plaintiff contends that she "was never compensated for her loss of annual leave and sick leave which totaled over 600 hours for the period of September 9, 2002 through October 28, 2004." (Compl. ¶ 41, ECF No. 2.) Defendant asserts that Plaintiff was indeed compensated for back pay and all benefits she was entitled including annual leave. However, Defendant correctly contends that Plaintiff was not entitled to payment for sick leave as members of the Federal Employee Retirement Service ("FERS"), to which Plaintiff belong, are not entitled to payout for sick leave. As a result, she is not entitled to payment for any loss of sick leave. (Decl. William C. Coutu, ECF No. 27-1.) Moreover, Plaintiff does not put forth any evidence demonstrating that she is entitled to more compensation than she already

6

received and accepted. Accordingly, Defendant complied with the Final Order in regards to compensation.

*3. Thrift Savings Plan*

Plaintiff alleges that Defendant has not complied with the Final Order because she "was never compensated for the Thrift Savings Plan ("TSP") for the period of September 9, 2002 through October 28, 2004." (Compl. ¶ 41, ECF No. 2.) However, as Defendant previously explained to Plaintiff, USPS did contribute to Plaintiff's TSP during that time period. (Def.'s Br. Summ. J. at 5.) Further, Defendant noted that TSP is a separate agency and as a separate agency, Defendant does not have the authority to directly provide Plaintiff with her TSP. Instead, Plaintiff must contact TSP directly to access her TSP account. During her deposition Plaintiff admitted that she had never made any attempts to contact the Thrift Savings Plan Agency to retrieve the deposited money. (VV Dep. 39:2-8.)

As of December 2016, Plaintiff admits that she received partial payment to her TSP. (Pl.'s Opp. at 7 ("It should be noted that Plaintiff did receive a partial payment to her Thrift Savings Plan [for the time period in question] which was discovered by Plaintiff December, 2016.").) Plaintiff does not state why she believes that she only received partial payment. On the other hand, Defendant puts forth evidence that Plaintiff has been fully compensated. In an email from Defendant's attorney to Plaintiff's, Defendant explained that a 1% contribution was added to Plaintiff's TSP by Defendant as elected by Plaintiff. (Def.'s Br. Summ. J. at 5.)

Accordingly, Defendant has complied with the Final Order with respect to contribution to Plaintiff's TSP.

**B. Plaintiff Has No Claim Under the Rehabilitation Act.**

7

As detailed above, Defendant compensated Plaintiff for any harm that took place prior to Plaintiff's reinstatement with the USPS on October 28, 2004. Plaintiff admits accepting the compensation. (Def. Ex. 1 at 7, ECF No. 27-6.) Therefore, the Court will next examine the time period from October 28, 2004 through July 2007, when Plaintiff left work before she retired in October 2007. (Compl. ¶ 3.) Plaintiff alleges that Defendant discriminated against her on the basis of her disability and that her ultimate retirement was effectively a constructive discharge.

Plaintiff's claims are governed under the Rehabilitation Act, 29 U.S.C. § 791, *et seq.*, which provides the remedy for federal employees alleging disability discrimination. *Peltier v. United States*, 388 F.3d 984, 989 (6th Cir. 2004); *Felder v. Runyon*, No. 00-1011, 2000 U.S. App. LEXIS 24832, at *3 (6th Cir. Sep. 26, 2000). The Rehabilitation Act provides that "no otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Under the Rehabilitation Act the Court applies the burden shifting framework developed for claims of discrimination under Title VII. *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir. 2001). The plaintiff has the initial burden to set forth a prima facie case of discrimination. *McDonnel Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817 (1973). The burden then shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for its actions. *Id.* If the defendant carries this burden, the plaintiff must then prove by a preponderance of the evidence that the reasons offered by the employer were a pretext for discrimination. *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089 (1981). The ultimate burden of persuasion remains at all times with the plaintiff. *Id.*

To establish her prima facie case of discrimination, Plaintiff must show (1) that she was an individual with a disability, (2) who was otherwise qualified to perform a job's requirements, with or without reasonable accommodation, and (3) who was discriminated against solely because of the disability. *Plautz v. Potter*, 156 F. App'x 812 (6th Cir. 2005) (citing *Mahon v. Crowell*, 295 F.3d 585, 589 (6th Cir. 2002)). In a case where constructive discharge is alleged, such as this, the third element requires a plaintiff to have suffered an adverse employment action. *Id.* (citing *Smith v. Henderson*, 376 F.3d 529, 533 (6th Cir. 2004)).

Defendant does not dispute that Plaintiff is an individual with a disability. The parties dispute whether Plaintiff suffered an adverse employment action.[4]

### 1. Plaintiff Did Not Suffer An Adverse Employment Action.

An adverse employment action is a "materially adverse change in the terms or conditions of . . . employment because of [the] employer's conduct." *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 182 (6th Cir. 2004) (quoting *Kocsis v. Multi-Care Mgmt, Inc.*, 97 F.3d 876, 885 (6th Cir. 1996)). A "bruised ego" or a "mere inconvenience or an alteration of job responsibilities" is not sufficient to constitute an adverse employment action. *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 797 (6th Cir. 2004) (en banc) (citation omitted). Adverse employment actions are typically marked by a "significant change in employment status," including "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision

---

[4] The parties also dispute whether Plaintiff was otherwise qualified to perform a job's requirements. As the Court finds that Plaintiff did not suffer from an adverse employment action, this issue need not be decided. However, the Court notes that while Plaintiff claims to dispute this issue and puts forth case law in support, Plaintiff provides no analysis or explanation as to how she was qualified to perform her "job's requirements" despite admissions made in her application for disability retirement that she was unable to perform her duties. (Def.'s Br. Summ. J. at 19–20.) *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 807, 119 S. Ct. 1597 (1999) ("When faced with a plaintiff's previous sworn statement asserting 'total disability or the like, the court should require an explanation of any apparent inconsistency . . . that explanation must be sufficient to warrant a reasonable juror's concluding that . . . the plaintiff could nonetheless 'perform the essential functions' of her job, with or without 'reasonable accommodation.'")

9

causing a significant change in benefits." *Id.* at 798 (quoting *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761, 118 S. Ct. 2257 (1998)).

Plaintiff does not allege that during the relevant time period between 2004 and 2007 she was ever fired, passed over for a promotion, or otherwise suffered from any significant change to her employment status at any time except for when she applied for and received early retirement due to her disability. In fact, Plaintiff applied for and received a promotion prior to retirement. Therefore, reviewing Plaintiff's pleadings in the light most favorable to her, the only adverse employment action Plaintiff could have reasonably suffered stems from her retirement in 2007, which she characterizes as a constructive discharge.

An employee may show an adverse employment action by establishing that he or she was constructively discharged. *Johnson v. JPMorgan Chase & Co.*, 922 F. Supp. 2d 658, 672 (S.D. Ohio 2013). Constructive discharge "requires a finding that working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1107 (6th Cir. 2008) (internal quotations omitted); *Smith*, 376 F.3d at 553–54. "A constructive discharge claim depends upon the facts of each case and requires an inquiry into the intent of the employer and the reasonably foreseeable impact of the employer's conduct upon the employee." *Talley*, 542 F.3d at 1107. (internal quotations omitted).

In an attempt to show that she suffered from an adverse employment action, Plaintiff cites to *Knox v. Indiana*, 93 F.3d 1327 (7th Cir. 1996) and claims that she suffered from retaliatory harassment by co-workers. In *Knox*, the plaintiff's "co-workers "embarked on a campaign of vicious gossip and profanity aimed at making 'her life hell'" *Id.*at 1331. In contrast here, Plaintiff cites to isolated instances where her coworkers appeared been rude and

10

unprofessional and to the receipt of letters from the USPS along, with her ultimate retirement, to allege that she was constructively discharged. (Pl.'s Opp. at 15); (VV Dep. 56:12–24.)

Unfriendly and rude behavior does not automatically constitute harassment. Harassment must be "severe" and "pervasive." *Ault v. Oberlin Coll.*, 620 F. App'x 395, 400 (6th Cir. 2015). To determine if harassment existed the Court "look[s] at all the circumstances including the frequency of the discriminatory conduct; its severity, whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.*

Plaintiff fails to establish that her co-workers' rude and unprofessional behavior amounts to harassment. Plaintiff cites to an incident in June 2005 where she contends that while working in the Registry Room alone, she needed to take mail to the dock. (Pl.'s Opp. at 13.) According to Plaintiff, the USPS rules require that there is either one employee in the Registry Room or that the Registry Room is locked. (*Id.*) Plaintiff alleges that a coworker had previously commented that she did not have to help Plaintiff with her work due to her disability. (VV Dep. 56:4–6.) She alleges that on that particular day, no one was in the room when she needed to take mail to the dock, which she believed was motivated by her coworker's comment. (*Id.* at 57:23–13.) Plaintiff therefore locked the room and brought the mail to the dock. (Pl.'s Opp. at 13.) Upon her return, Plaintiff states that coworkers were waiting outside of the room, locked out. (*Id.*) She claims that she asked her coworkers "who was supposed to stay, because you knew I had this dispatch, and it was like ha ha, too bad for you." (VV Dep. 57:5–18.) Plaintiff also explains that she reported her co-workers to her supervisor on the day of the incident and that her supervisor addressed the issue with Plaintiff's co-workers. (*Id.* at 57:5–18; 58:1–11; 59:23–24.) During her deposition,

Plaintiff acknowledged that the coworkers stopped bothering her after speaking with the supervisor. (VV Dep. 59:15–25.)

Next, in 2006, Plaintiff claims that she "was followed into a nurse's office by management" and that this incident "was an escalation from merely coworkers harassing Plaintiff to that of management." (Pl.'s Opp. at 14.) However, as Defendant points out, Plaintiff's deposition shows that her manager approached her to ask if there was a problem. Plaintiff said she responded by telling her manager "Velma, don't even think about it. I told you to stay away from me, and I turned around and walked away." (VV Dep. 68:12–14.)

Plaintiff also alleges harassment by her supervisor, Mr. Brown in June 2007. Plaintiff cites to one incident with Mr. Brown where she received a letter telling her that her light duty restrictions could not be accommodated after she had put in a request for a new accommodation. (VV Dep. 61:18–22.) Plaintiff claims that she was dismissed from work upon receiving the letter. Defendant however cites to records that show Plaintiff received full compensation for the day in question. Moreover, Plaintiff was quickly reinstated to her position after receipt of the letter. As Plaintiff stated in her deposition, the issue was quickly resolved. "I got to come back after it was explained to Mr. Brown that being on a limited duty job offer, which is the same as a motivated job offer, that he could not deny letting me work, and that I did not have a light duty restriction to not be accommodated in." (VV Dep. 62:13–17.)

Finally, in July 2007, Plaintiff alleges that a co-worker "basically" called her a "troublemaker" when she attempted to turn in items to the lost and found from her locker. (VV Dep. 65:1-69:4.) Further, she states that she felt threatened by another co-worker's facial expression during the incident. *Id.* The Court concludes that Plaintiff's allegations here do not present any severe or pervasive behavior that would rise to the level of harassment.

Additionally, Plaintiff alleges that she received a series of letters from July 19, 2007 until October 15, 2007 "indicating that if Plaintiff did not return to her [post office] position, she should resign." (Pl.'s Opp. at 19.) In fact, Plaintiff received letters on July 19, 2007, July 26, 2007, and August 20, 2007 all stating:

> You have been absent from your duty assignment since July 12th, 2007, and you have not provided this office with acceptable documentation concerning your absence. You are hereby instructed to notify your Supervisor **immediately** as to the reason for you extended absence, and <u>when you expect to return to duty</u>.

(Pl.'s Ex. I, ECF No. 34-9) (emphasis in original.) Plaintiff received a letter on October 15, 2007 containing the same information and also stating "**[i]f you have no intention of returning to the Postal Service, you may wish to fill out the PS Form 2574 (Resignation from the Postal Service).**" (*Id.*) (emphasis in original.) Plaintiff then applied for early retirement due to her disability on May 22, 2007. (Def. Ex. D, ECF No. 27-13.) Her application was granted on October 17, 2007. (Def. Ex. 9, ECF No. 27-12 ("Our records show that you claim you were disabled due to mitral valve prolapse, sick sinus syndrome, pacemaker implantation, major depression, post-traumatic stress disorder. . .we have found you to be disabled for your position as a Mail Processing Clerk, due to restrictions of pacemaker implantation **only**.")) (emphasis in original.) Plaintiff has failed to show how her voluntary election to retire as offered in this final letter was coercive or in any way amounted to a constructive discharge.

Unlike the plaintiff in *Knox* who endured a "relentless campaign of fellow employee harassment," Defendant's alleged conduct does not rise the level the *Knox* court found severe and pervasive. *Knox*, 93 F.3d at 1331. Even accepting as true and making justifiable inferences in favor of Plaintiff, a review of the alleged incidents, taken together, reveals no issues of material fact upon which a reasonable jury could find for Plaintiff. Therefore, the Court agrees with Defendant that the foregoing does not support Plaintiff's contentions that such actions

13

would cause a reasonable person in the Plaintiff's shoes to have felt compelled to resign. Thus Plaintiff did not suffer a constructive discharge and cannot establish a prima facie claim of discrimination under the Rehabilitation Act. Accordingly, Defendant's motion for summary judgment on Plaintiff's claims under the Rehabilitation Act is **GRANTED**.

## IV. CONCLUSION

For the reasons stated above, Defendants' motion (ECF No. 27) is **GRANTED**.

**IT IS SO ORDERED.**

5-11- 2017
**DATE**

**EDMUND A. SARGUS, JR.**
**CHIEF UNITED STATES DISTRICT JUDGE**